UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
21871 HEMPSTEAD FOOD CORP.,

     Plaintiff,

 - against -

UNITED STATES OF AMERICA,

     Defendant.
----------------------------------------------------------x

MEMORANDUM AND ORDER

14 Civ. 00006 (ILG)

GLASSER, Senior United States District Judge:

  The Plaintiff 21871 Hempstead Food Corp. ("Hempstead") brings this action pursuant to 7 U.S.C. § 2023 to seek <u>de novo</u> review of a determination by an agency of the United States to permanently disqualify the plaintiff from participating in the Supplemental Nutrition Assistance Program ("SNAP"). The agency is the Food and Nutrition Service ("FNS") of the United States Department of Agriculture ("USDA"). The defendant is the United States of America.[1] The defendant moves for summary judgment. For the reasons that follow, the motion is GRANTED.

## LEGAL BACKGROUND

  SNAP coupons are distributed to eligible low-income households to buy eligible food items at stores authorized to accept and redeem SNAP coupons. 7 U.S.C. § 2013. The Government pays the stores the value of the coupons redeemed. 7 U.S.C. § 2016(h); 7 C.F.R. § 274.2; 7 U.S.C. § 2019.

  The laws governing SNAP prohibit "trafficking," defined as the exchange of SNAP coupons for cash. 7 C.F.R. § 278.2(a). The Food Stamp Act of 1977, 7 U.S.C. § 2011 <u>et seq.</u>, requires the FNS to permanently disqualify a store from the SNAP program for

---

[1] Although Hempstead names both the United States and the USDA as defendants, only the United States is a proper defendant. 7 U.S.C. § 2023(a)(13); <u>Santana v. U.S. Dept. of Agriculture</u>, No. 11-cv-5033, 2012 W.L. 2930223, at *2 n.5 (E.D.N.Y. July 18, 2012).

1

trafficking on "the first occasion." 7 U.S.C. § 2021(b)(3)(B). In lieu of permanent disqualification, the FNS may impose a fine if the store provides "substantial evidence" that it had an effective SNAP compliance policy at the time of the violations. Id. Stores are also prohibited from accepting SNAP coupons for ineligible items such as hot food, cleaning supplies, and other non-food products. 7 C.F.R. § 278.2(a). FNS may disqualify or fine a store that accepts SNAP coupons for the purchase of ineligible items. Id. at § 278.6(e)(5), (f)(1).

## FACTUAL BACKGROUND

The undisputed facts are as follows.[2] Hempstead, which was incorporated in November 2008, received authorization to accept SNAP coupons on March 12, 2009. Administrative Record at 1–8. In May 2013, the FNS investigated Hempstead through a confidential informant ("CI") who visited the store four times and observed violations of SNAP regulations. Id. at 9–26. On two of these visits, the store employee agreed to exchange $30 worth of SNAP coupons for $20 cash. Id. at 71–72. On three of these visits, the employee accepted SNAP coupons from the CI for non-eligible items.[3] Id. at 13–18, 72.

The FNS notified Hempstead of these violations by letter dated June 28, 2013, which informed Hempstead that it had 10 days to provide documentation of an effective compliance policy warranting the imposition of a fine in lieu of permanent disqualification. Id. at 9–10. Hempstead responded through its attorney by letter dated

---

[2] Plaintiffs have not submitted a statement countering the Government's Local Rule 56.1 statement, as required by subpart (b) of the local rule. This Court accordingly deems the facts in the Government's Local Rule 56.1 statement supported by the record and admitted. See Vt. Teddy Bear Co. v. 1-800 BEARGRAM Co., 373 F.3d 241, 244 (2d Cir. 2004).

[3] Because exchanging SNAP coupons for ineligible items mandates a lesser sanction than trafficking SNAP coupons, the parties focus instead on the trafficking violations.

July 9, 2013, which requested a fine in lieu of permanent disqualification for trafficking. Id. at 28–30. Hempstead stated that it had an effective compliance policy that had been in effect since 2008, it educated its employees on all aspects of SNAP regulations, and it "was not aware of, did not approve, did not benefit from, and was not in any way involved in the conduct or approval of trafficking violations."[4] Id. at 29. Hempstead did not provide documentation to support its assertions or dispute the violations. Id. at 77.

On August 9, 2013, Hempstead submitted a supplemental response, which included signed and notarized statements from the store owner, Mouteeh Mohamed Mousa, and two store employees. Id. at 31–37. The supplemental response did not include the required written and dated compliance policy.

Mousa's statement described the store's compliance policy that he claimed had been in effect since 2008.[5] Under this policy, all newly-hired employees view a USDA instructional video about the SNAP program and are instructed "on a regular basis" that SNAP coupons may be used to purchase only eligible items and may not be exchanged for cash. Id. at 33. In their statements, the two employees confirmed that they viewed the instructional video and were repeatedly instructed not to exchange SNAP coupons for ineligible items or engage in trafficking. Id. at 36–37.

After reviewing Hempstead's submissions, the FNS determined that permanent disqualification was the appropriate sanction. Id. at 38–45. It found that Hempstead "failed to submit sufficient evidence to demonstrate that [Hempstead] had established and implemented an effective compliance policy and program to prevent violations of [SNAP]." Id. at 44. Hempstead requested an administrative review of this determination

---

[4] Hempstead was not authorized to accept SNAP coupons until 2009, so Hempstead seems to be mistaken.

[5] Again, the owner of Hempstead seems to be mistaken about this date.

3

by letter dated October 31, 2013. Id. at 48–49. The FNS responded with a request for additional information, to which Hempstead did not respond. Id. at 63. The FNS issued a final decision on December 10, 2013, confirming its previous sanction of permanent disqualification. Id. at 71–77. The agency reasoned that Hempstead did not submit a written and dated compliance policy or evidence contemporaneous with the policy's implementation—documentation that would warrant the imposition of a fine instead of permanent disqualification. Id. at 75-77.

Hempstead filed suit on January 2, 2014. The USDA filed a motion for summary judgment on May 2, 2014. Hempstead filed a response on June 20, 2014. The USDA filed a reply on July 11, 2014.

## DISCUSSION

### I. Legal Standards

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. A fact is material if it might affect the outcome of the suit under the governing law." Fincher v. Depository Trust & Clearing Corp., 604 F.3d 712, 720 (2d Cir. 2010) (quotation omitted). The moving party bears the burden of establishing the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A court deciding a motion for summary judgment must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." Brod v. Omya, Inc., 653 F.3d 156, 164 (2d Cir. 2011) (quotation omitted).

4

"Where, as here, a plaintiff concedes that violations occurred, the sole issue for the court is whether the penalty was arbitrary or capricious." Ade v. United States, No. 13 Civ. 2334, 2014 WL 1333672, at *3 (S.D.N.Y. Mar. 31, 2014) (citation and quotation omitted); see also Makey Deli Grocery v. United States, 873 F. Supp. 2d 516, 520 (S.D.N.Y. 2012). The reviewing court may not overturn an agency decision if the agency followed its guidelines. Makey Deli Grocery, 873 F. Supp. 2d at 520.

## II. Analysis

The Food Stamp Act requires permanent disqualification from SNAP participation for vendors who have trafficked coupons. 7 U.S.C. § 2021(b)(3)(B). The FNS has discretion to impose a monetary penalty in lieu of permanent disqualification only if "there is substantial evidence that such store or food concern had an effective policy and program in effect to prevent violations." Id.; accord Traficanti v. United States, 227 F.3d 170, 175 (4th Cir. 2000); Kim v. United States, 121 F.3d 1269, 1276 (9th Cir. 1997).

USDA regulations provide four criteria for determining eligibility for a monetary penalty in lieu of permanent disqualification: (1) the existence of an effective compliance policy; (2) evidence that the policy was in operation at the location of the violation before the violations occurred; (3) the existence of an effective personnel training program; and (4) evidence that store ownership was unaware of, did not approve of, did not benefit from, and was in no way involved in the trafficking violations. See 7 C.F.R. § 278.6(i).

The regulations further set out the supporting documentation that the FNS requires and will consider. As to the existence of an effective compliance policy, "FNS shall consider written and dated statements of firm policy." Id. at § 278.6(i)(1). As to the

existence of the policy before the violations occurred, "policy statements shall be considered only if documentation is supplied which establishes that the policy statements were provided to the violating employee(s) prior to the commission of the violation." Id. And as to the existence of an effective personnel training program, "A firm which seeks a civil money penalty in lieu of a permanent disqualification shall document its training activity by submitting to FNS its dated training curricula and records of dates training sessions were conducted; a record of dates of employment of firm personnel; and contemporaneous documentation of the participation of the violating employee(s) in initial and any follow-up training held prior to the violation(s)." Id. at § 278.6(i)(2).

There is no material factual dispute in this case and the Government has shown that it is entitled to judgment as a matter of law. FNS followed its guidelines in imposing the sanction of permanent disqualification, so this court may not overturn its decision for being arbitrary and capricious. Hempstead failed to submit documentation warranting the imposition of a monetary penalty. It did not submit a written and dated copy of its compliance policy, which the regulations require. Nor did it submit dated training curricula, dates of training sessions, or contemporaneous documentation of the participation of violating employees in training, which the regulations also require. Hempstead has not provided the requisite "substantial evidence" of its compliance policy and training program, and the FNS accordingly did not act arbitrarily or capriciously. The permanent disqualification sanction may be harsh, but it is what the governing regulations required in this case.

## CONCLUSION

For the foregoing reasons, the Government's motion for summary judgment is GRANTED.

SO ORDERED.

Dated:   Brooklyn, New York
         September 4, 2014

/s/
I. Leo Glasser
Senior United States District Judge